**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Mark Petroff,

Plaintiff,

v.

Good Night Stay LLC,

Defendant.

No. CV-25-01940-PHX-DMF

**ORDER**

This matter is before the Court on the Motion for Summary Judgment (Doc. 38) filed by Defendant Good Night Stay, LLC ("Defendant" or "GNS"). Plaintiff Mark Petroff ("Plaintiff" or "Petroff") filed a Response in Opposition to Defendant's Motion for Summary Judgment ("Response") (Docs. 40, 41). Defendant filed a Reply in Support of Defendant's Motion for Summary Judgment ("Reply") (Doc. 42). Neither party requested oral argument (Docs. 38, 40), and the Court finds Defendant's Motion for Summary Judgment suitable for decision without oral argument. *See* LRCiv 7.2(f).

Upon careful consideration of the parties filings and applicable law, the Court will deny Defendant's Motion for Summary Judgment (Doc. 38) for the reasons below.

## I. PROCEDURAL POSTURE

On June 4, 2025, Plaintiff initiated these proceedings by filing a Complaint against Defendant in this Court (Doc. 1). In Count I of the Complaint, Plaintiff alleges discrimination under the Americans with Disabilities Act ("ADA") (*Id.* at 4-6). In Count II of the Complaint, Plaintiff alleges retaliation for engaging in a protected activity under

the ADA (*Id.* at 6). On June 5, 2026, Defendant filed the pending Motion for Summary Judgment seeking summary judgment on both counts alleged in the Complaint (Doc. 38). Defendant's Motion for Summary Judgment is ripe for decision (*see* Docs. 40, 41, 42). Plaintiff Mark Petroff and Defendant GNS are the only parties to this matter. Both parties consented to have a United States Magistrate Judge conduct all further proceedings in this case with direct review by the Ninth Circuit (Docs. 8, 14, 15).

## II. BACKGROUND[1]

Prior to Plaintiff's employment with GNS, Plaintiff was diagnosed with Ehlers-Danlos Syndrome (Doc. 39 at 5 ¶ 30; Doc. 41 at 12 ¶ 30). GNS was aware of Plaintiff's Ehlers-Danlos Syndrome diagnosis (Doc. 39 at 5 ¶ 31; Doc. 41 at 12 ¶ 31). Plaintiff began working for GNS in March 2022 in the position of Revenue Manager (Doc. 39 at 5 ¶ 28; Doc. 41 at 12 ¶ 28). The Revenue Manager position required Plaintiff to provide day-to-day market analysis of rental pricing and adjust the pricing of each GNS property in real-time in response to day-to-day market conditions (Doc. 39 at 3 ¶ 11; Doc. 41 at 5 ¶ 11).

Throughout the rest of 2022, Plaintiff worked in his role as Revenue Manager for GNS but required some flexibility with his work schedule due to family obligations or medical issues (Doc. 39 at 5-6 ¶¶ 32-37; Doc. 41 at 13-14 ¶ 32-37). For example, Plaintiff needed to be absent from work because his hot water heater broke, Plaintiff needed to take care of an ill family member, and on occasion Plaintiff needed to take a sick day or arrive late to work due to an emergency room visit (*Id.*). On January 30, 2023, GNS CEO Scott Graden emailed Plaintiff expressing frustration about Plaintiff's absence that day (Doc. 39 at 6 ¶ 42; Doc. 41 at 16 ¶ 42). Graden separately emailed Plaintiff expressing concerns about Plaintiff's performance as Revenue Manager (Doc. 39 at 6 ¶ 44; Doc. 41 at 16 ¶ 44).

In early February 2023, Plaintiff contacted GNS's outside HR vendor seeking a form to request an unpaid medical leave of absence (Doc. 39 at 7 ¶ 52; Doc. 41 at 19 ¶ 52). The form that Plaintiff received advised: "This form should not be used to request leave under the Family and Medical Leave Act or to request leave as an accommodation under

[1] The following background facts are undisputed by the parties and the documentation submitted by the parties.

the ADA" (Doc. 39 at 7 ¶ 56; Doc. 41 at 19-20 ¶ 56). Plaintiff filled out the form requesting unpaid leave for "medical treatment expected 6 weeks - TBD" and submitted the form to Graden for approval on February 13, 2023 (Doc. 39 at 7 ¶¶ 53-55; Doc. 41 at 19 ¶¶ 53-55). In its Reply, Defendant acknowledges that "the leave request form Petroff used identified March 31, 2023, as an expected return-to-work date" (Doc. 42 at 3). Indeed, the form itself reflects that Plaintiff identified express leave dates as February 13, 2023, to March 31, 2023, and entered in the reason for leave section "Medical treatment expected 6 weeks – TBD" (Doc. 39-2 at 52; Doc. 41-8 at 2).

Plaintiff was absent from February 2, 2023, through his termination effective on February 27, 2023 (Doc. 39 at 9 ¶¶ 70, 72; Doc. 41 at 24, 25 ¶¶ 70, 72). Shortly after his termination, Plaintiff provided a February 28, 2023, medical note from his doctor explaining that Plaintiff "needs to be excused from work due to his mental health issues prohibiting him from appropriately fulfilling his job responsibilities. The patient is being treated with medications to address his symptoms but is not stable at this time" (Doc. 39 at 9 ¶¶ 73-74; Doc. 39-2 at 54; Doc. 41 at 25-26 ¶¶ 73-74). Around the time of his termination, Plaintiff was diagnosed with depression, sleep apnea, and POTS (Doc. 39 at 9 ¶¶ 75-76; Doc. 41 at 26 ¶¶ 75-76).

## III. SUMMARY JUDGMENT STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" as well as "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party, and the Court must "draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

Summary judgment is appropriate "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The nonmoving party "must produce specific evidence, through affidavits or admissible discovery material[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In other words, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id.* Moreover, factual inferences cannot be created by pointing to "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV. LEGAL FRAMEWORK

### A. Discrimination Under the ADA

Title 42, Section 12112(a) of the United States Code provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To establish discrimination under the ADA, a plaintiff must show that "(1) he is 'disabled' within the meaning of the Act; (2) he is a 'qualified individual' within the meaning of the Act; and (3) he was terminated because of his disability." *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1229 (9th Cir. 2003).

As relevant here, the term "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine whether a plaintiff is a qualified individual, courts in the Ninth Circuit employ a two-part test:

> We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether 'the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires.' At step two, we determine whether, 'with or without reasonable accommodation,' the individual is able to 'perform the essential functions of such position.'

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127-28 (9th Cir. 2020) (citing and quoting 29 C.F.R. § 1630.2(m)).

Determining the essential functions of a position is a highly fact-specific inquiry. *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). "[A] job's 'essential functions' are its 'fundamental' duties, not the 'marginal functions of the position.'" *Id.* at 887 (quoting 29 C.F.R. § 1630.2(n)(1)). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Regulations further provide that a job function may be considered essential if "the reason the position exists is to perform that function," there are a "limited number of

employees" who can perform that job function, or the function is "highly specialized" so that the employee is hired for his "expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). Though a plaintiff retains the ultimate burden of proof, the employer has the burden of production to establish what job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Regarding reasonable accommodation, the plaintiff has the burden of showing the existence of a reasonable accommodation that would have allowed him to perform the essential functions of his job. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). To avoid summary judgment, the plaintiff must show that a proposed accommodation seems reasonable on its face. *Id.* "[A] court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (citations omitted).

**B. Retaliation Under the ADA**

To establish retaliation under the ADA, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)). The Ninth Circuit has recognized that requesting reasonable accommodation for a disability constitutes a protected activity. *Coons*, 383 F.3d at 887 (discussing retaliation under the Rehabilitation Act); *see Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 WL 4899603, at *21 (D. Ariz. Oct. 9, 2018) ("Under the ADA, requesting a reasonable accommodation for an alleged disability constitutes protected activity." (quoting *Coons*, 383 F.3d at 887)). Once the plaintiff establishes a prima facie case of retaliation, "the employer has the burden to 'present legitimate reasons for the adverse employment action.'" *Coons*, 383 F.3d at 887 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). "If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext,

then the retaliation case proceeds beyond the summary judgment stage." *Id.* (citing *Brooks*, 229 F.3d at 928).

## V. DISCUSSION

### A. Summary of the Parties' Positions

#### *1. Defendant's Motion for Summary Judgment (Docs. 38, 39)*

In the Motion for Summary Judgment, Defendant argues that it is entitled to summary judgment on both of Plaintiff's ADA claims because Plaintiff cannot prove he was a qualified individual under the ADA (Doc. 38 at 9-14). Defendant begins by describing the essential functions of Plaintiff's role as Revenue Manager at GNS (*Id.* at 9-11). Citing Plaintiff's description of his duties, Defendant states that the Revenue Manager role required "day-to-day, in-person operations, real-time critical thinking, and quick decision-making" (*Id.* at 9). Defendant emphasizes that the "ability to commute into the office in Scottsdale, AZ" was "absolutely necessary to the role" and states that GNS executives confirmed that "being in-office was an essential function of the position" (*Id.* at 10). Defendant continues by describing how Plaintiff's role required real-time "million dollar" decisions and only GNS's CEO could take over if Plaintiff could not perform the work (*Id.*). Defendant thus argues that "the essential functions of the Revenue Manager position included, at minimum, making real-time, high stakes decisions, critical thinking and analysis, being physically present in the office, and the ability to communicate and work with others" (*Id.* at 11).

Defendant next contends that Plaintiff could not perform the essential functions of his role with or without reasonable accommodation (Doc. 38 at 11-12). Defendant cites Plaintiff's deposition testimony wherein Plaintiff stated that he "could not make the decisions that were necessary for [Plaintiff] to do [his] job during that period of time" (*Id.* at 11; *see* Doc. 39-2 at 31). Defendant also points to a letter from Plaintiff's doctor reflecting the doctor's opinion that "[Plaintiff] needs to be excused from work due to his mental health issues prohibiting him from appropriately fulfilling his job responsibilities" (Doc. 38 at 12; *see* Doc. 39-2 at 54). Accordingly, Defendant maintains that Plaintiff could

not perform the essential functions of his role without an extended leave of absence which would require shifting Plaintiff's essential functions to other GNS employees (Doc. 38 at 12).

Finally, Defendant argues that Plaintiff's request for leave of an indefinite length was unreasonable as a matter of law (Doc. 38 at 12-14). Defendant acknowledges that job-protected leave for a fixed period can be an accommodation but argues that indefinite leave, such as that requested by Plaintiff, is not reasonable as a matter of law (*Id.* at 13). Citing this Court's decision in *Chandler v. DeJoy*, 714 F. Supp. 3d 1108, 1132 (D. Ariz. 2024), Defendant asserts that Plaintiff's proffered accommodation is unreasonable because neither he nor his doctor could accurately specify the duration of the leave of absence (*Id.*). Because the only accommodation that would eventually allow Plaintiff to return to work was leave for an indeterminate period of time, Defendant argues that there was no reasonable accommodation that GNS could have granted to Plaintiff that would have allowed Plaintiff to perform the essential functions of his position (*Id.* at 13-14).

Thus, Defendant asks the Court to enter summary judgment in its favor against Plaintiff on all claims asserted in the Complaint (Doc. 38 at 14).

*2. Plaintiff's Response (Docs. 40, 41)*

In his Response, Plaintiff argues that genuine issues of material fact preclude summary judgment on his ADA claims (Doc. 40 at 7-14). First, Plaintiff argues that he has presented a triable issue as to whether he is a "qualified individual" under the ADA (*Id.* at 7-9). Plaintiff contests Defendant's characterization of physical presence in the office as an essential function of Plaintiff's role at GNS (*Id.*). Plaintiff argues:

> Despite Defendant's claims, physical presence was not an essential function of the job, but merely Defendant's preference. Plaintiff had a private office, he regularly worked remotely after business hours and on weekends, he was allowed schedule flexibility associated with his teaching role and was allowed to work remotely occasionally throughout his employment. (SSOF at ¶¶ 12–21, 42–44, 62). Communications between him and other employees largely occurred by email, text, telephone, or virtual meetings; indeed, Plaintiff interacted with coworkers and property owners located out of state or remotely. (SSOF at ¶¶ 10–11, 21).

(Doc. 40 at 8).

Plaintiff also contests Defendants' characterization of his leave request as indefinite in length, stating:

> Petroff specifically requested medical leave for a finite timeframe (February 13, 2023 through March 31, 2023) to allow him to undergo treatment for approximately 6 weeks to enable him to return to work and perform his job. While Plaintiff temporarily could not perform the role, his requested accommodation would allow him to do so, and therefore he is a qualified individual.

(Doc. 40 at 8). Accordingly, Plaintiff argues that whether he is a qualified individual under the ADA is a triable issue (*Id.* at 9).

Plaintiff further argues that Defendant relies on inapposite case law in arguing that Plaintiff's requested leave was unreasonable as a matter of law (Doc. 40 at 10-11). Plaintiff argues that *Chandler v. DeJoy* and other cases cited by Defendant involved employees with no estimated return date (*Id.* at 10). Because Plaintiff requested medical leave for a fixed period of time—February 23, 2023 to March 31, 2023—Plaintiff reasons that his accommodation request was facially reasonable (*Id.* at 11). Plaintiff also argues that Defendant failed to engage in an interactive process to identify an effective accommodation (*Id.*). Plaintiff states that Graden failed to provide instructions or documentation required to seek leave and that Graden "vaguely claimed additional 'documentation' was needed" after Plaintiff submitted an unpaid leave request (*Id.*). Finally, Plaintiff asserts that Defendant cannot demonstrate undue hardship that would result from Plaintiff's requested unpaid leave (*Id.* at 12).

As to Plaintiff's retaliation claim, Plaintiff argues that he engaged in a protected activity by requesting unpaid medical leave as an accommodation for his disability (Doc. 40 at 13-14). Plaintiff states that fourteen days after he submitted his request and one business day after Graden requested documentation to support the request, Graden terminated Plaintiff writing that Plaintiff was to be terminated on the leave form itself (*Id.*). Plaintiff contends that such circumstances support an inference of retaliation (*Id.* at 14). Finally, Plaintiff argues that Defendants stated reasons for termination (failure to provide

documentation and excessive absences) were pretextual (*Id.* at 14-15). Plaintiff states that Defendant "failed to provide Petroff with any instructions, a specific form, a deadline to return the paperwork, or a meaningful opportunity to provide additional documentation," the alleged absenteeism "relies on alleged attendance records that were reconstructed following Plaintiff's termination," and "there is also abundant evidence contradicting the alleged performance issues Defendant contends existed" including that "received a bonus on December 30, 2022; [Plaintiff's supervisor] repeatedly praised his work; and Petroff was never subjected to any formal discipline" (*Id.* at 15). Plaintiff also argues that the timeline of events presents circumstantial evidence of retaliation and pretext (*Id.*).

Thus, Plaintiff asks the Court to deny Defendant's Motion for summary judgment in its entirety (Doc. 40 at 16).

*3. Defendant's Reply (Doc. 42)*

In its Reply, Defendant asserts that Plaintiff has not shown a genuine dispute on the dispositive issue—whether Plaintiff was a qualified individual under the ADA (Doc. 42 at 1). Defendant acknowledges that Plaintiff disputes whether physical presence at the office was an essential function for the Revenue Manager role but argues that the Court need not decide the issue because Plaintiff testified that his medical condition and medication prevented him from exercising the judgment required for the position of Revenue Manager (*Id.* at 2). Defendant next argues that the estimated return to work date of March 31, 2023, does not establish that Plaintiff's requested leave was definite (*Id.* at 3-5). Defendant notes Plaintiff's use of the terms "expected" and "TBD" on the leave form and states that Graden did not know the length of leave Plaintiff was requesting (*Id.* at 3). Citing *Rancourt v. OneAZ Credit Union*, No. CV-17-00194-PHX-JJT, 2018 WL 3926491, at *3 (D. Ariz. Aug. 16, 2018), Defendant reasons that summary judgment is warranted because Plaintiff merely provided a date by which he hoped to return and Plaintiff provided no medical documentation with an estimated return date (*Id.* at 4-5).

Defendant next asserts that no reasonable accommodation would have allowed Plaintiff to perform the essential functions of his role (Doc. 42 at 5). Defendant states:

> Petroff did not request remote work, reduced duties, part-time work, reassignment, or any other accommodation that would have permitted him to perform some or all of the essential functions of the Revenue Manager position. That was because no accommodation could have allowed him to perform the essential functions of his highly demanding position—rather, he simply requested to take an indefinite amount of time off until he and his doctor felt like he was mentally stable enough to come back to work. Accordingly, Petroff's own testimony contradicts his legal argument that GNS could have (or should have) offered to provide him with a different accommodation that would have allowed him to perform the essential functions of his role.

(Doc. 42 at 5). Defendant further argues that excusing Plaintiff form work for the requested period would impose an operational hardship on GNS (*Id.* at 5-7). Due to Plaintiff's unique and valuable position at GNS, Defendant argues that it is permitted to deny leave because Plaintiff supplied only an approximate return date:

> The Revenue Manager position was singular and specialized, and GNS hired Petroff for his experience. The role required frequent, if not hourly, pricing decisions. SSOF ¶¶ 12–14, 17–18. During Petroff's many absences (most of which were unexcused) his work responsibilities fell to the CEO or less qualified employees. SSOF ¶ 68. Petroff had already been absent for most of February, including many of the most critical days leading up to the Super Bowl, which was the busiest and most demanding time of the year for GNS. SSOF ¶ 71. Granting Petroff's indeterminate leave request placed a hardship on GNS that no employer (or his co-workers) should reasonably have to bear.

(Doc. 42 at 6).

Defendant continues by arguing that it is not liable for any defect in the interactive process because no reasonable accommodation was available (Doc. 42 at 7-9). Defendant first contends that Plaintiff's request for leave was vague and on the incorrect form to make an ADA accommodation request, thus it was insufficient to trigger Defendant's obligation to engage in an interactive process (*Id.* at 7-8). Next, Defendant argues that under *Rancourt* no reasonable accommodation exists because the only effective accommodation was an indeterminate leave of absence (*Id.* at 8-9).

Finally, Defendant argues that Plaintiff cannot establish retaliation because GNS

had legitimate nonretaliatory reasons for terminating Plaintiff (Doc. 42 at 9-11). Defendant maintains that GNS terminated Plaintiff for the following reasons: "a months long pattern of attendance and performance concerns, Petroff's repeated failure to record time off as directed in the company's payroll system, his extended, unapproved absences throughout February 2023 without any supporting medical documentation, and GNS's inability to plan coverage for a critical role in lieu of a reliable return date" (*Id.* at 9-10). Defendant further argues that any bonus, praise, or lack of formal discipline do not demonstrate that GNS's reasons for terminating Plaintiff were false because the relevant question is whether GNS subjectively acted in good faith (*Id.* at 10). Though temporal proximity between a leave request and termination may help show retaliation, Defendant asserts that there is no evidence of unlawful pretext here and temporal proximity alone does not establish that GNS fabricated its rationale for Plaintiff's termination (*Id.* at 10-11).

**B. Genuine Issues of Material Fact Preclude Summary Judgment**

In its Motion for Summary Judgment, Defendant asserts that it is entitled to summary judgment based upon one issue—whether Plaintiff was a qualified individual under the ADA (Doc. 38 at 9-14). Upon review of the record and applicable law, the Court concludes that genuine issues of material fact exist regarding Plaintiff's qualified status under the ADA.

*1. Plaintiff's Discrimination Claim (Count I)*

To survive summary judgment, an ADA plaintiff must first establish a prima facie case of discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* If the employer meets its burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove discrimination by demonstrating that the employer's explanation is pretextual. *Id.* As discussed above, Plaintiff's prima facie case requires him to show that (1) he is disabled under the ADA, (2) he is a qualified individual under the ADA, and (3) he was terminated because of his disability. *Kaplan*, 323 F.3d at 1229.

As to the first element, Plaintiff has established that he was diagnosed with Ehlers-Danlos Syndrome, depression, sleep apnea, anxiety, and POTS (Doc. 41-1 at 7 ¶¶ 37-38). Plaintiff has further shown that his diagnosed medical conditions affected major life activities including Plaintiff's ability to see, work, read, drive, sleep, and concentrate (*Id.* at 7 ¶ 39). Plaintiff has also established that he informed GNS about his medical conditions and associated symptoms (*Id.* at 7-8 ¶¶ 40-46). Thus, the Court agrees with Plaintiff's assertion that a reasonable jury could conclude that Plaintiff suffered from one or more disabilities under the ADA and that Defendant was aware of those disabilities before the decision to terminate his employment (*see* Doc. 40 at 7).

As to the third element, Plaintiff has presented evidence that GNS refused to accommodate Plaintiff's disabilities ultimately resulting in Plaintiff's termination. Plaintiff has established that in early February 2023, due to the severity of his symptoms, Plaintiff informed Graden that he had been hospitalized on several occasions and would require medical leave for four to six weeks to seek medical treatment (Doc. 41-1 at 8-9 ¶¶ 47-48). On February 13, 2023, Plaintiff submitted a request for unpaid medical leave from February 13, 2023, through March 31, 2023 (*Id.* at 9 ¶ 52). On February 24, 2023, Plaintiff contacted Graden about his leave request and Graden stated that additional documentation was required (*Id.* at 9 ¶¶ 54-55). On the next business day, February 27, 2023, Graden terminated Plaintiff's employment and wrote on Plaintiff's leave request form: "No documentation received to date on medical leave of absence. Employee to be terminated" (*Id.* at 10 ¶¶ 58-59). Thus, the Court agrees with Plaintiff's assertion that a reasonable jury could find that Defendant refused to accommodate Plaintiff's disabilities directly resulting in Plaintiff's termination (*see* Doc. 40 at 9).

Returning to the second element, under which Defendant seeks summary judgment, the Court follows the established two-step inquiry to determine whether Plaintiff has established a genuine issue of material fact regarding his qualified status. *See Anthony*, 955 F.3d at 1127-28. As to step one, neither party disputes that Plaintiff satisfied the prerequisites of the Revenue Manager position. The heart of the parties' dispute is whether

Plaintiff could perform the essential functions of his position with or without a reasonable accommodation and whether Plaintiff's requested leave was unreasonable as a matter of law.

At step two, Defendant has the burden of production to establish what job functions are essential and Plaintiff has the burden to show the existence of a reasonable accommodation that would have allowed him to perform the essential functions of his job. *Samper*, 675 F.3d at 1237; *Dark*, 451 F.3d at 1088. As Defendant acknowledges in its Reply, Plaintiff disputes whether in-person presence at GNS's office was an essential function of his position but maintains that Defendant is entitled to summary judgment regarding the undisputed core functions of Plaintiff's position: "market and revenue analysis, forecasting, pricing judgment, supervision, and consequential financial decision-making" (Doc. 42 at 2). Accordingly, the Court finds no genuine dispute regarding the following functions of Plaintiff's position as Revenue Manager: market and revenue analysis, forecasting, pricing judgment, supervision, and consequential financial decision-making.

Turning to whether Plaintiff could perform the essential functions of his position without accommodation, Defendant is correct that there is no genuine dispute that Plaintiff could not. When asked why Plaintiff did not request to work from home after starting medication for his condition, Plaintiff responded:

> I did not feel at that time that I was capable of driving or doing -- I didn't know how the medication would impact my judgment, and I didn't want to make million dollar decisions under the influence of a narcotic -- narcotic that I wasn't -- or not – a medication -- sorry, not a narcotic -- a medication that I wasn't familiar with.

(Doc. 39-2 at 28). Additionally, when Plaintiff was asked whether he could perform the requirements of his job, Plaintiff stated:

> Because of the medical issues I was having I did not feel that it was safe for me to drive and that I could not make the decisions that were necessary for me to do my job during that period of time.

(Doc. 39-2 at 31). Moreover, Plaintiff's letter from his doctor confirmed that his medical

conditions "prohibit[ed] him from appropriately fulfilling his job responsibilities" (*Id.* at 54). Accordingly, the record reflects that there is no genuine dispute that Plaintiff's medical conditions and the effects from the medication to treat Plaintiff's medical conditions[2] prevented him from exercising proper judgment and thus Plaintiff was, without accommodation, unable to perform the analysis and price adjustment required by the undisputed essential functions of Revenue Manager.

Regarding whether Plaintiff could perform the essential of his Position with reasonable accommodation, the parties dispute as a matter of fact whether the requested leave was indefinite and dispute as a matter of law whether the requested leave was unreasonable. Defendant characterizes Plaintiff's leave request as follows:

> Mr. Petroff requested unpaid leave for "expected 6 weeks - TBD." Mr. Graden testified that, based on the leave request form submitted by Mr. Petroff, he did not know when Mr. Petroff would return to work (if at all). Mr. Petroff confirmed he did not know how long his leave would last. And the note provided by Mr. Petroff's doctor after his termination did not provide an estimate as to when Mr. Petroff could return to work. Mr. Petroff's testimony further confirms that there was no accommodation other than an extended leave of an indeterminate length that would have allowed him to (eventually) return to work and perform his job duties.

(Doc. 38 at 13-14). Yet Plaintiff points out that the leave form he filled out requested leave for a definite period of time—February 13, 2023 to March 31, 2023 (Doc. 40 at 10; *see* Doc. 39-2 at 52). Plaintiff also explained during his deposition that the requested leave was estimated to be 30 to 60 days:

> Q. And did he -- could he say with certainty how long it would take before you would be in a position where you could work again?
>
> A. I don't recall him saying that, but I remember the duration of the time that it takes for that prescription for the body to adapt to it is 30 to 60 days.
>
> Q. Thirty to sixty days, okay. And so was the leave that you requested tied to the adaptation of your body to the antidepressant that he was

[2] The Ninth Circuit has recognized that a disability may result from side-effects of medication. *McAlindin v. County of San Diego*, 192 F.3d 1226, 1236 (9th Cir.1999).

prescribing you?

A. The reason I requested the leave was because of the medication I was taking and the impact and the loss of vision. I wanted to have a period of time that my body could be acclimated to the medication I was taking and see if it fixed the issues I was experiencing.

Q. And at the time did you know what -- how long it would take to -- what the duration of -- how long it would take for your body to acclimate to this new medication?

A. There's no way for me to know how long it would take, but from what I read it was expected to be about 30 days, and that's why I requested 30 days or TBD because it could be less than 30 days or more than 30 days. Each person is different.

(Doc. 39-2 at 27-28). In its Reply, Defendant discusses the above stated facts and concludes that "the record supports the leave request was of an indeterminate length" (Doc. 42 at 3). Yet, reviewing the evidence in the light most favorable to Plaintiff and considering that Plaintiff filled out the form requesting leave for a finite period of time as well as Plaintiff's understanding that the body took 30 to 60 days to adapt to the medication, the Court concludes that Plaintiff has presented a triable issue as to whether his requested leave was indefinite in length.

Citing *Rancourt*, Defendant points to a letter from Plaintiff's doctor sent after Plaintiff's termination and insists that the leave request was indefinite because his doctor provided no estimated return date and stated that Plaintiff was "not stable" as to his mental-health issues (Doc. 42 at 4). Aside from the fact that the letter was provided to Defendant after Plaintiff's termination and thus could not have played a part in Defendant's decision to terminate Plaintiff, the Court finds *Rancourt* distinguishable to the facts here. As Defendant acknowledges, the plaintiff in *Rancourt* was "totally disabled and unable to work entirely" (*Id.* at 3-4). *See* 2018 WL 3926491, at *3. The plaintiff's status as totally disabled was supported by evidence that the plaintiff received Social Security disability benefits, the plaintiff's doctors never released him to work, and the plaintiff certified to his insurance carrier that he was unable to work. *Id.* Thus, the court rejected the plaintiff's

mere hope to return to work by a defined date. *Id.*

Here, nothing in the record suggests that Plaintiff is totally disabled and entirely unable to work due to his medical conditions. On the contrary, Plaintiff's understanding was that after 30 to 60 days his body would adapt to the prescribed medication and he would be able to return to work. The letter from Plaintiff's doctor does not conclusively rebut Plaintiff's understanding. True, the letter reflects that Plaintiff was "not stable," but that quote is taken from the doctor's statement that "[Plaintiff] is being treated with medications to address his symptoms but is not stable *at this time*" (Doc. 39-2 at 54 (emphasis added)). Thus, the letter does not demonstrate that Plaintiff was entirely precluded from returning to work. The letter instead suggests that Plaintiff was undergoing treatment and would be able to return to work in the future.

Similarly, the Court agrees with Plaintiff's assertion that:

> [I]n each case Defendant relies in arguing Plaintiff's request was unreasonable, the employee failed to articulate any estimated return date. *See Makor v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 542, 544 (9th Cir. 2017) (employee on medical leave from July 2012 until March 2013 then the leave was further extended with no return date estimated and the employee was "totally incapacitated."); *Chandler v. DeJoy*, 714 F. Supp. 3d 1108, 1133 (D. Ariz. 2024) (no duration for leave was provided by the employee who the employer had already provided multiple extended leave periods); *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1236 (9th Cir. 2012) (a NICU nurse was offered multiple accommodations and leaves of absences, but denied the employee's request for an unlimited number of absences per year)[.]

(Doc. 40 at 10-11). In short, Plaintiff's request for unpaid leave from February 23, 2023, to March 31, 2023, is facially reasonable.

Moreover, the Court rejects Defendant's assertion that Plaintiff cannot be a qualified individual because the only accommodation requested was a period of unpaid leave (*see* Doc. 38 at 11-12). In *Nunes*, the Ninth Circuit recognized that a temporary inability to work does not categorically render a plaintiff unqualified. 164 F.3d at 1247. The Ninth Circuit explained:

> The ADA requires that Nunes be able to perform the essential functions of her job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). Unpaid medical leave may be a reasonable accommodation under the ADA. *See* 29 C.F.R. Part 1630, Appendix (discussing § 1630.2(o)). Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer. *See* 42 U.S.C. § 12111(9), (10); *Norris v. Allied–Sysco Food Servs., Inc.*, 948 F.Supp. 1418, 1438 (N.D.Cal.1996). If Nunes's medical leave was a reasonable accommodation, then her inability to work during the leave period would not automatically render her unqualified.

*Nunes*, 164 F.3d at 1247.

Here, Plaintiff has raised genuine issues of material fact as to whether the requested leave, estimated to last six weeks, was a reasonable accommodation and whether the leave would impose an undue hardship on GNS. Defendant asserts that Plaintiff held a unique and valuable position at GNS as Revenue Manager and that granting Plaintiff leave would have unreasonably shifted Plaintiff's responsibilities to Graden and Plaintiff's co-workers (Doc. 42 at 6). However, Plaintiff counters that there would be no undue hardship because GNS maintains an unpaid leave of absence policy and a co-worker was promoted to Revenue Manager immediately after Plaintiff's termination (Doc. 40 at 12; *see* Doc. 41-5 at 106-108). Plaintiff also notes that Graden testified during his deposition that Plaintiff's leave would have been approved if Plaintiff provided a doctor's note along with the leave request (Doc. 40 at 12). Graden testified:

> Q. Okay. Okay. Do you know if anyone else besides you reviewed this Unpaid Leave of Absence Form?
>
> A. I don't know.
>
> Q. Okay. And then in terms of not approving it, was there any other reasons for not approving it aside from not having a doctor's note?
>
> A. I think the doctor's note was -- yeah, we would need some substantiation and the doctor's note. That's it.
>
> Q. Okay. So had he provided the doctor's note, do you believe you would have approved it?

A. Yeah, that -- yes.

(Doc. 41-5 at 91-92). Accordingly, the evidence viewed in the light most favorable to Plaintiff presents a genuine issue of material fact as to whether Plaintiff's requested leave was a reasonable accommodation and whether it would impose an undue hardship on GNS.

With respect to Plaintiff's prima facie case of discrimination, genuine issues of material fact exist regarding Plaintiff's qualified status under the ADA. Defendant is therefore not entitled to summary judgment on Count I of the Complaint.

*2. Plaintiff's Retaliation Claim (Count II)*

To establish a prima facie case of retaliation, Plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two. *Coons*, 383 F.3d at 887. The parties do not dispute that Plaintiff suffered an adverse employment action and, as discussed above, a reasonable jury could find that Defendant refused to accommodate Plaintiff's disabilities directly resulting in Plaintiff's termination. The Court also agrees with Plaintiff's reasoning that the short timeframe between Plaintiff's leave request and termination is sufficient to establish a causal connection:

> Defendant terminated Petroff only fourteen days after he submitted a formal unpaid leave request, and only one business day after Defendant first requested additional documentation. (SSOF at ¶¶ 54–59, 70). This timeframe supports an inference of retaliation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding a three month timeframe is sufficient to support an inference of retaliation.).
>
> Additionally, Defendant's reasoning for the termination—that plaintiff did not provide documentation—is evidence of retaliation considering Defendant only allowed Plaintiff one business day to do so. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) (a jury can infer retaliatory motive where an employer's explanation is unworthy of credence.). Defendant knew Plaintiff was contacting his doctor to provide documentation, yet Defendant abruptly terminated Plaintiff the following business day. (SSOF at ¶¶ 58–60, 70).

(Doc. 40 at 14).

The sole basis for Defendant's summary judgment motion as to Plaintiff's

retaliation claim is that Plaintiff is not a qualified individual for purposes of involvement in a protected activity (Doc. 38 at 8-14). For the reasons above, *see supra* Section V(B)(1), the Court finds that Plaintiff has proffered sufficient evidence to raise a genuine issue of material fact as to his qualified status under the ADA. Thus, Defendant is not entitled to summary judgment on Count II of the Complaint.

*3. Nonretaliatory Reasons and Pretext*

In its Motion for Summary Judgment, Defendant attacks only Plaintiff's prima facie cases of discrimination and retaliation (*see* Doc. 38). Defendant does not assert a legitimate, nonretaliatory reason for Plaintiff's termination as a basis for summary judgment (*see id.*). Plaintiff argues in his Response that Defendant's proffered reasons for termination (failure to provide documentation and excessive absenteeism) lack credibility (Doc. 40 at 14-16). In its Reply, Defendant asserts that it terminated Plaintiff due to "a months long pattern of attendance and performance concerns, Petroff's repeated failure to record time off as directed in the company's payroll system, his extended, unapproved absences throughout February 2023 without any supporting medical documentation, and GNS's inability to plan coverage for a critical role in lieu of a reliable return date" (Doc. 42 at 9-10). Thus, the issue is not properly raised as a basis for summary judgment. *See Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]"); *see also Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2020 WL 1536326, at *8 (D. Ariz. Mar. 31, 2020) ("[A] party moving for summary judgment must raise, in its initial motion, all of the grounds on which it is seeking relief."). In any event, Plaintiff has made a pretext showing sufficient to avoid summary judgment.

"[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1127 (9th Cir. 2000). When, as here, a plaintiff presents only indirect evidence of

pretext, he "must produce specific, substantial evidence of pretext." *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998).

Regarding pretext, Plaintiff asserts:

> First, Defendant's proffered reason for termination, the failure to provide documentation, lacks credibility. Defendant failed to provide Petroff with any instructions, a specific form, a deadline to return the paperwork, or a meaningful opportunity to provide additional documentation. (SSOF at ¶¶ 50, 55–57, 65–70, 76). Second, Defendant claims Plaintiff demonstrated excessive absenteeism, but relies on alleged attendance records that were reconstructed following Plaintiff's termination. Additionally, the attendance record Defendant relies contains dates that predated Petroff's employment, dates he worked remotely, and dates he arrived to work late or left early yet cites the entire day as an absence. (SSOF at ¶¶ 29–33). Third, there is also abundant evidence contradicting the alleged performance issues Defendant contends existed. Indeed, Petroff received a bonus on December 30, 2022; Heim repeatedly praised his work; and Petroff was never subjected to any formal discipline. Indeed, while Defendant claims there were multiple owner complaints and issues, he fails to offer any specifics concerning the alleged complaints or documented discipline in line with its policies. (SSOF at ¶¶ 22–28, 34–36).
>
> Finally, temporal proximity in time is sufficient circumstantial evidence of retaliation for both the prima facie case and the showing of pretext. *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 694 (9th Cir. 2017). As stated, Defendant terminated Plaintiff only 14 days following his formal request for unpaid leave and only one business day after Graden first notified Petroff that "documentation" was missing. (SSOF at ¶¶ 51 60, 70, 76). Therefore, a reasonable jury can conclude that Defendant's stated reason for termination—failure to provide documentation—is pretextual.

(Doc. 40 at 15-16).

Upon review, the Court finds that Plaintiff has presented specific and substantial evidence of pretext to avoid summary judgment. First is the temporal proximity between Plaintiff requesting medical leave and his termination fourteen days later. Further, Plaintiff presents evidence rebutting Defendant's assertion of performance issues including the bonus awarded in December 2022, praise from his supervisor, and the lack of formal discipline. Finally, Defendant's assertion of absenteeism cuts both ways. Though absenteeism can be a legitimate, nondiscriminatory reason for adverse employment action,

it is undisputed that at least some of Plaintiff's absences were due to his medical conditions (Doc. 39 at 6 ¶ 37; Doc. 41 at 14 ¶ 37). A reasonable jury could therefore find a causal link between Plaintiff's termination and Plaintiff's absences due to his medical conditions. *See Humphrey*, 239 F.3d at 1140 ("[A] jury could reasonably find the requisite causal link between a disability of OCD and Humphrey's absenteeism and conclude that MHA fired Humphrey because of her disability.").

In sum, Plaintiff has presented specific and substantial evidence of pretext to avoid summary judgment despite Defendant's assertion of legitimate, nonretaliatory reasons for Plaintiff's termination.

*4. Sufficiency of Plaintiff's Accommodation Request*

Though not raised as a basis for summary judgment in its Motion for Summary Judgment, Defendant asserts in its Reply that Plaintiff did not clearly request an ADA accommodation sufficient to trigger its obligation to engage in an interactive process (Doc. 42 at 7-8). Upon review, this argument substantively fails for purposes of summary judgment. It is a reasonable factual inference from the record that Plaintiff sufficiently put Defendant on notice of Plaintiff's need for an accommodation.

In general, "it is the responsibility of the individual to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9. Yet the employee's burden to notify the employer is not a great one. "The employee need only inform the employer of a need for an adjustment due to a medical condition using plain English and need not mention the ADA or use the phrase reasonable accommodation." *Marquez*, 2018 WL 4899603, at *19 (internal quotation marks omitted) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000)).

Here, Plaintiff stated the following in a declaration based upon his own personal knowledge and under the penalty of perjury:

> 35. From approximately February 1, 2023 through February 7, 2023, I was hospitalized multiple times due to increased symptoms that impaired my ability to see, read, drive, sleep, concentrate, and work.

> 36. I notified Graden of my hospitalizations and my need for time off by both text message and email.
>
> 37. On February 7, 2023, I notified Graden that I was working with my doctors and would be requesting four to six weeks of medical leave due to my symptoms.
>
> 38. Graden never provided any instructions on how to formally request medical leave or any form for me to complete.
>
> 39. On February 13, 2023, I submitted an unpaid leave of absence form to Graden requesting time off from February 13, 2023 through March 31, 2023 for medical treatment that was expected to continue for six weeks.

(Doc. 41-3 at 5-6). Plaintiff also provided copies of his text messages with Graden. One such message reflects that Plaintiff told Graden the following:

> Hello Scott. I mentioned in my email I have to use my pto after my sick time this week. I've been in the hospital 3 times and I'm in the process of starting medical leave. I can't drive and after the last er visit I was to they will right me for leave 4-6 weeks to start. I'm sorry the challenge this causes but I physically can not do more that what I am doing for my health.

(Doc. 41-11 at 73).

Though Plaintiff's communications with Graden did not use the terms "ADA" or "reasonable accommodation," the evidence supplied by Plaintiff reflects that Plaintiff informed Graden of the need for a work adjustment due to his medical conditions in plain English. Thus, the Court rejects Defendant's Reply argument that undisputed facts demonstrate that Plaintiff failed to put Defendant on notice of a need for an accommodation.

## VI. CONCLUSION

As explained above, genuine issues of material fact exist regarding Plaintiff's qualified status under the ADA. Therefore, the Court will deny Defendant's Motion for Summary Judgment (Doc. 38). By separate order, the Court will refer the parties to a United States Magistrate Judge to conduct a settlement conference.

Accordingly,

**IT IS HEREBY ORDERED** denying Defendant's Motion for Summary Judgment (Doc. 38).

Dated this 20th day of August, 2026.

Honorable Deborah M. Fine
United States Magistrate Judge